Adam B. Wolf (State Bar No. 215914)
Tracey B. Cowan (State Bar No. 250053)
**PEIFFER WOLF CARR & KANE,**
**A PROFESSIONAL LAW CORPORATION**
5042 Wilshire Blvd., No. 304
Los Angeles, CA 90036
Tel: (415) 766-3545
Fax: (415) 402-0058
awolf@prwlegal.com
tcowan@prwlegal.com


*Counsel for Plaintiffs*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

### SAN DIEGO DIVISION

|  |  |
|---|---|
| CHRISTINA TORRES, Individually and on behalf of all other similarly situated, | Case No. **'18 CV2069 BEN WVG** |
| Plaintiff, | **CONSOLIDATED AMENDED CLASS ACTION COMPLAINT** |
| vs. | |
| NORTHCENTRAL UNIVERSITY, INC., | 1. Fraud in the Inducement (Arizona Law); |
| Defendant. | 2. Unjust Enrichment (Arizona Law); |
|  | 3. Breach of Contract (Arizona Law); |
|  | 4. Violation of Arizona Consumer Fraud Act, A.R.S. § 44-1521 et seq.; |
|  | 5. Breach of Implied Covenant of Good Faith and Fair Dealing (Arizona Law); |
|  | 6. Fraud in the Inducement (California Law); |
|  | 7. Unjust Enrichment (California Law); |
|  | 8. Breach of Contract (California Law); |
|  | 9. Violations of California Business and Professions Code §17200; |
|  | 10. Violations of the Consumer Legal Remedies Act, California Civil Code §1750 et seq.; |
|  | 11. Untrue and Misleading Advertising in Violation of Cal. Bus. & Prof. Code §17500 |

et seq.;

12. Breach of Implied Covenant of Good Faith and Fair Dealing (California Law);

13. Fraud in the Inducement (New Jersey Law);

14. Unjust Enrichment (New Jersey Law);

15. Breach of Contract (New Jersey Law);

16. Breach of Implied Covenant of Good Faith and Fair Dealing (New Jersey Law);

17. Violation of New Jersey's Consumer Fraud Act 56:8;

18. Fraud in the Inducement (New York Law);

19. Unjust Enrichment (New York Law);

20. Breach of Contract (New York Law);

21. Breach of Implied Covenant of Good Faith and Fair Dealing (New York Law); and

22. Violation of NY CLS Gen Bus § 349.

**DEMAND FOR JURY TRIAL**

Plaintiff Christina Torres, individually and on behalf of all others similarly situated, by and through her undersigned counsel, brings this Class Action Complaint ("Complaint") against Defendant Northcentral University, Inc. ("NCU").

## NATURE OF THE ACTION

1.     This action seeks redress for Plaintiff Torres and hundreds of similarly situated doctoral students who were harmed by 1) NCU's knowing misrepresentations and omissions about the length of time and costs within which those students could expect to complete their doctoral programs, and 2) doctoral programs that were deliberately designed to ensure that it would be difficult — if not impossible — for students to complete within the time periods and cost promised by NCU.

2.     NCU's misrepresentations and omissions, and its unfairly drawn-out doctoral programs, ensured that NCU would receive tuition and fee payments from doctoral students well beyond their expected completion dates.

3.     NCU's doctoral programs were essentially bait-and-switch operations. The bait was displayed when NCU's marketing materials and employees misled prospective students by promising that doctoral degrees would cost less and take less time to complete than those programs would actually take. For example, students seeking a Doctor of Education ("Ed.D.") were told that it would take "3 ½ - 5 years" at a cost of $30,600.[1] However, NCU's own documents confirm that the Ed.D. program was in fact "designed" to take 83 months, or nearly 7 years, which would result in a cost exceeding $50,000.[2]

4.     Prospective students took NCU's bait when they committed to attend the university, paid substantial tuition and fees, and obtained substantial student loans.

5.     Once enrolled in the doctoral programs, problems began. While the students attempted to obtain their degree, they met an endless series of hurdles, delays, and tuition payments, resulting in

[1] Ex. 1, R.Magpayo email to C.Torres.
[2] Ex. 2, Ed.D. Program Data (Jan. 2016).

students incurring unnecessary additional loans beyond those they expected to incur based on the timeframes promised by NCU. Students who believed that they were getting ever closer to their doctoral degree were repeatedly confronted with decreasing resources, high faculty turnover, disorganization, a lack of oversight, poorly trained instructors, a twenty-one-day-turnaround time (with most instructors taking the full twenty-one days to respond their students), and little to no constructive feedback (or if feedback was given, inconsistent feedback), all of which extended the doctoral students' enrollments at NCU. Frustrated, doctoral students eventually realized that, contrary to NCU's promises, they did not control the time it would take to complete their degree — they were at the mercy of NCU.

6.     While students did what they could to obtain their doctoral degrees, their programs stretched beyond the promised timeframes, and tuition payments (and student loans) continued to mount.

7.     As students' enrollment at NCU dragged on for years past the expected timeframes, NCU's promises of an affordable education became a nightmare of frustration and crushing debt.

8.     Many students' debt would grow so large that they would have no choice but to un-enroll so they could stop accumulating more debt and dedicate themselves full time to paying back their enormous student loans, all without degrees to show for their hard work.

9.     NCU knew full well that its doctoral programs took longer to complete than what was represented to prospective students, but NCU withheld this information from Plaintiff Torres and other NCU doctoral students before their enrollment and after they enrolled.

10.    As a for-profit corporation, NCU has clear incentives to mislead students about how long it will take to complete their doctoral programs. First, the longer it takes for a student to get a degree, the more tuition and fees (and profit) NCU receives. Second, because NCU knows that most of its students rely on loans to finance their education and will consider the expected total cost of a

2

doctoral program before agreeing to enroll, NCU has every reason to make its programs appear as affordable as possible to prospective students, regardless of whether they are affordable.

11.     NCU also knows that once students have paid tens of thousands of dollars to partially complete their program, they will be compelled to continue enrolling for additional semesters (and taking out additional loans) for fear of having nothing to show for the time and resources that they have already committed.

12.     Given that the NCU doctoral programs are completed online, students are isolated from their peers, and those who were experiencing frustrating delays associated with NCU's doctoral programs were largely unable to see whether others faced the same challenges. Instead, the students would assume that their problems were unique to them and continue to fight a fight they could not win.

13.     NCU's doctoral programs were intended to (and did) generate substantial revenue for NCU by way of additional tuition and fees. NCU's doctoral programs caused Plaintiff Torres and the Classes and Subclasses as defined below to: 1) pay substantially more for NCU's doctoral educational services than promised or reasonably anticipated by the students, 2) incur more student loan debt (based on NCU's estimates) than they would have but for NCU's unlawful activities, and 3) fail to graduate when they were told they would, if at all.

14.     NCU's doctoral programs caused substantial damage to Plaintiff Torres and the Classes and Subclasses. If NCU had not misrepresented or withheld important information about how long doctoral degree programs actually took, how much it would cost to complete those programs, and how many students actually completed those programs, students would not have attended NCU, made tuition and fee payments, or assumed student loan debt for tuition and fees, room and board charges, costs of books and supplies, and other expenses.

15. Further, had NCU not misrepresented or omitted key facts about the timelines, costs, and other statistics related to its doctoral program, Plaintiff Torres and the Classes and Subclasses would not have paid for the educational services offered by NCU or borrowed any amount in student loans.

16. Because those students relied upon NCU's misrepresentations and omissions, they are now saddled with crippling debt, bad credit, inability to obtain additional student loans, useless course credits that will not transfer to other institutions, and for many, no doctoral degree.

## THE PARTIES

17. Plaintiff Torres attended NCU as a doctoral student from 2010-2017. While enrolled at NCU, she resided in New Jersey (until Sept. 2011) and New York (from Sept. 2011 to present). Plaintiff Torres currently resides at 3188 Chaffee Avenue, Bronx, NY 10465.

18. Upon information and belief and during the time of the actions described herein, Defendant NCU was an Arizona corporation authorized to do business and doing business in Yavapai County, Arizona as an ACS-WASC accredited private distance-learning (online) university. Until Dec. 31, 2016, NCU's headquarters were located at 8667 East Hartford Drive, Scottsdale, Arizona 85255, as was its service center. Upon information and belief, NCU's current headquarters are located at 2488 Historic Decatur Rd, Suite 100, San Diego, California 92106, and have been there since Jan. 1, 2017.

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and this is a class action in which certain Class members and Defendant are citizens of different states.

20. This Court has personal jurisdiction over NCU because it conducts significant business in this district, it is headquartered in this district, and many of the acts complained of herein took place within and from this district.

CLASS ACTION COMPLAINT
CASE NO. TBD

**NORTHCENTRAL**

21.     NCU is a private, for-profit, online university founded in Prescott, Arizona in 1996.

22.     NCU offers online degree and certificate programs from the bachelor's level through the doctoral degree level in its School of Education, School of Business and Technology Management, and School of Social and Behavioral Sciences.

23.     NCU offers a number of online, doctorate level degrees: Doctor of Business Administration (DBA), PhD in Business Administration (PhD in BA), Doctor of Education (Ed.D.), PhD in Education, PhD in Technology and Innovation Management, PhD in Psychology, PhD in Organizational Leadership, Doctorate of Marriage and Family Therapy, PhD in Marriage and Family Therapy, Education Specialist Degree (Ed. S.).

24.     NCU currently has approximately 10,000 current students, 5,500 alumni and potentially thousands of former doctoral students who did not graduate.

25.     Ninety-eight percent of NCU's current student body is comprised of graduate students; 69 percent of whom are enrolled in doctoral degree programs.

**NORTHCENTRAL'S NEVER-ENDING DOCTORAL PROGRAMS**

26.     Through its recruiting and marketing to prospective students, NCU promises that obtaining a doctoral degree from NCU is not only feasible, it is inexpensive and relatively quick.

27.     Through marketing materials and its recruiters, NCU promises prospective students unrealistic timelines and costs to program and/or dissertation completion that clash with the actual length of time and cost of its doctoral programs.

CLASS ACTION COMPLAINT
CASE NO. TBD

**NCU's Ed.D. Program is Designed Take 81-83 Months, but
NCU represented a Much Shorter Time to Completion to Prospective Students.**

28.     For years, NCU knowingly misrepresented to prospective students the time it would take to complete NCU doctoral programs.

29.     Focusing first on NCU's Ed.D. program (Plaintiff Torres's chosen area of study), in a disclosure document dated January 31, 2011, NCU stated that "Normal (average) time to complete this 54 credit degree program is 40 months."[3]

30.     A year later, in a disclosure document dated March 26, 2012, NCU stated that "Students starting the [Ed.D.] program after July 1, 2011 who maintain continuous enrollment can expect to complete the program in 47 months."[4]

31.     NCU continued this short-completion-time narrative six months later in a disclosure document dated September 14, 2012, where it again stated that "Students starting the [Ed.D.] program after July 1, 2011 who maintain continuous enrollment can expect to complete the program in 47 months."[5]

32.     Even in the next school term, in a disclosure document dated January 31, 2013, NCU again stated that "Students starting the [Ed.D.] program after July 1, 2011 who maintain continuous enrollment can expect to complete the program in 47 months."[6]

33.     From at least 2011-2013 then, NCU represented to prospective students that the average completion time Ed.D. was a 40-47-month program.

34.     Similarly, around this same timeframe, recruiters from NCU would personally promise short timelines to prospective students as well. While most promises were verbal, some were in writing.

---

[3] Ex. 3 at 3, 2011 NCU Gainful Employment Disclosure (Ph.D. Ed., Ed.D.).
[4] Ex. 4 at 2, 3/2012 NCU Ed.D. Gainful Employment Disclosure.
[5] Ex. 5 at 7, 9/2012 NCU Gainful Employment Disclosure.
[6] Ex. 6 at 10, 1/2013 NCU Gainful Employment Disclosure.

CLASS ACTION COMPLAINT
CASE NO. TBD

For example, in 2010, an NCU recruiter (in what looks to be a form email used for all prospective Ed.D. students) represented to Plaintiff Torres that completing her Ed.D. would take "3 ½ -5 years" at a cost of $30,600 to graduate.[7]

35.    The above-promised timelines are false.

36.    For the first time, on January 29, 2015, NCU admitted the Ed.D. program was actually "designed to take 81 months" and not the 40-47 months or 3 ½-5 years (42-60 months) that had been previously represented.[8]



Notably, according to this document only 63% of students *who graduated*[9] did so in 81 months, so it does not address the doctoral students who enrolled but did not graduate.

---

[7] Ex. 1, R.Magpayo email to C.Torres.
[8] Ex. 7, 2015 NCU Ed.D. Gainful Employment Disclosure.
[9] Ex. 7 (and Ex. 2) is silent on the percentage of students who actually graduate. It is envisioned then that the 63% who graduate in 81 months or less represent a small percentage of the total number of Ed.D. students enrolled at NCU, further skewing NCU's false promises of Ed.D. degrees in 3 ½-5 years.

CLASS ACTION COMPLAINT
CASE NO. TBD

37.     While an NCU recruiter represented a cost of $30,600 to Plaintiff Torres, this document confirms NCU knew that the true cost of completing the Ed.D. program would be much higher (expressly stating over $50,000 in tuition, fees, books and supplies…however, even these numbers appear low and not calculated with an 81-month completion time).

38.     Later in 2016, NCU admitted the Ed.D. program was actually "designed to take 83 months" (a month shy of 7 years) still years over the 3 ½-5 years that had been previously represented.



NCU's graduation rates also plummeted, with only 41% of students *who graduated* doing so within 83 months—meaning less than half of those *that graduated* did so in 83 months. The *average* time for students that graduated then was longer than 7 years.

39.     Despite its recent disclosures of the 81-83-month-"designed" times for NCU's doctoral programs, however, NCU unbelievably still misrepresents to prospective students that they can complete their programs in far less time.

CLASS ACTION COMPLAINT
CASE NO. TBD

40. For example, the NCU website currently states that the "Recommended Completion Time" for the Ed.D. program is "40 Months."[10]

41. Further, on webpages describing the available specializations for the Ed.D. Program, NCU provides graphics which reiterate the "Est. Time to Completion" is "40 months."[11]

42. NCU makes these representations despite the fact it admitted in 2016 that only 41% of students who graduated from NCU in 2014-2015 with an Ed.D. completed their programs within the "designed" 83-month timeframe. The remaining 59% of graduates took even longer than that.

43. An "Est[imated] Time to Completion" of 40 months in view of its 83-month data can only be described as fraudulent.

44. The difference between the promised timelines and reality is due to the systematic and intentional manner in which NCU delays their students. For example, doctoral students had to enroll in multiple additional dissertation courses even after they complete the required 54 course credits.[12]

45. As a result, the actual cost to complete the Ed.D. program far exceeded the times and costs represented by NCU. Plaintiff Torres, for example, completed 72 credit hours, 18 of which were dissertation courses beyond the required 54 course credits, before she was finally able to obtain her degree. Her total tuition paid was over $73,000, far higher than what was promised.

46. Further, NCU has a policy that its doctoral programs must be completed within 8 years (96 months). With NCU confirming the Ed.D. was an 81-83-month program (for the small percentage

---

[10] Ex. 8, NCU Ed.D. webpage (April 2018). It is unknown for which years NCU represented this length of time to prospective students; however, considering the 40-47-month representations it made from 2011-2013, it is likely such representations were made for the last several years.

[11] Ex. 9, NCU Ed.D. Curriculum and Teaching specialization webpage (June 2018).

[12] NCU has a "continuous enrollment" policy, which requires that "all students must earn attendance at least once every 28 consecutive calendar days or they will be administratively dismissed from the University." *See* http://ncu.catalog.acalog.com/content.php?catoid=6&navoid=1183#attendance-requirements. Thus, students who have completed their coursework but not their dissertations, must continue to pay tuition during the time they are working on their dissertations.

CLASS ACTION COMPLAINT
CASE NO. TBD

of students who graduated), an 8-year limit ensures most of NCU's Ed.D. students will not graduate. NCU then is not in the business of granting degrees, rather, it is in the business of collecting a maximum amount of tuition from doctoral students without regard to their ability to graduate.

### NCU's "Normal Time to Completion" and Course Design Fraud Cover Multiple NCU Doctoral Programs.

47.    NCU's misleading representations regarding tuition rates and times to completion were not confined to just the Ed.D. program.

48.    The NCU webpage for the Doctor of Philosophy in Education (Ph.D. Ed.) program lists a "Recommended Completion Time" of 45 months.[13]

49.    Similarly, the NCU webpages for each individual specialization available under the Ph.D. Ed. program also state an "Est. Time to Completion" of 45 months.[14]

50.    Despite these representations, NCU's own program disclosures for the Ph.D. Ed. program admit that the program is "designed to take 82 months to complete," and that only 54% of the 2014-2015 graduates were even able to complete the program within that 82-month timeframe.[15]

51.    The NCU webpage for the Doctor of Business Administration (DBA) program lists a "Recommended Completion Time" of 39 months.[16]

52.    Similarly, the NCU webpages for each individual specialization available under the DBA program also state an "Est. Time to Completion" of 39 months.[17]

---

[13] Ex. 10, NCU Ph.D. Ed. webpage (June 2018).
[14] See, e.g., Ex. 11, Curriculum and Teaching Specialization for PhD Ed. (June 2018).
[15] Ex. 12, Ph.D. Ed. Gainful Employment disclosure (Jan. 27, 2016).
[16] Ex. 13, NCU DBA webpage (April 2018).
[17] See, e.g., Ex. 14, NCU DBA, Financial Management Specialization Webpage (June 2018).

CLASS ACTION COMPLAINT
CASE NO. TBD

53. Despite these representations, NCU's own program disclosures for the DBA program admit that the program is "designed to take 84 months to complete," and that only 39% of the 2013-2014 graduates were even able to complete the program within that 84-month timeframe.[18]

54. The NCU webpage for the Doctor of Philosophy in Psychology (Ph.D. Psych.) program provides a "Recommended Completion Time" of 48 months.[19]

55. Similarly, the NCU webpages for each individual specialization available under the Ph.D. Psych. program provides an "Est. Time to Completion" of 48 months.[20]

56. Despite these representations, NCU's own program disclosures for the Ph.D. Psych. program admit that the program is "designed to take 84 months to complete," and that only 48% of the 2014-2015 graduates were even able to complete the program within that 84-month timeframe.[21]

57. The NCU webpage for the Doctor of Philosophy in Business Administration (Ph.D. BA) program lists a "Recommended Completion Time" of 45 months.[22]

58. Similarly, the NCU webpages for each individual specialization available under the Ph.D. BA program also state an "Est. Time to Completion" of 45 months.[23]

59. Despite these representations, NCU's own program disclosures for the Ph.D. BA program admit that the program is "designed to take 84 months to complete," and that only 39% of the 2014-2015 graduates were even able to complete the program within that 84-month timeframe.[24]

60. The NCU webpage for the Educational Specialist (Ed.S.) program represents a "Recommended Completion Time" of 18 months.[25]

---

[18] Ex. 15, NCU DBA Gainful Employment disclosure (Jan. 2015).
[19] Ex. 16, NCU Ph.D. Psych. Webpage (June 2018).
[20] See, e.g., Ex. 17, NCU Ph.D. in Health Psychology Webpage (June 2018).
[21] Ex. 18, NCU Ph.D. in Psych. Gainful Employment disclosure (July 2017).
[22] Ex. 19, NCU Ph.D. BA webpage (June 2018).
[23] Ex. 20, NCU Ph.D. BA, Advanced Accounting Specialization, Webpage (June 2018).
[24] Ex. 21, NCU Ph.D. BA Gainful Employment disclosure (Jan 2016).

CLASS ACTION COMPLAINT
CASE NO. TBD

61.     Similarly, the NCU webpages for individual specializations under the Ed.S. program state an "Est. Time to Completion" of 18 months.[26]

62.     Despite these representations, NCU's own program disclosures for the Ed.S. program admit that the program is "designed to take 52 months to complete," and that only 50% of graduates were even able to complete the program within that 52-month timeframe.[27]

63.     From the above, it is believed, and discovery will show, that NCU has made misrepresentations about *all* its doctoral programs as to the length of time and costs it would take to complete, and that those representations were made for years. Already evidence shows representations from at least 2010 until the current day. Given the form nature of these representations (including the 2010 form email to Plaintiff Torres), it is likely such misrepresentations have been ongoing for years prior to 2010.

## PROMISES OF TUITION COSTS AND TIMES TO COMPLETION BY NCU AND ITS RECRUITERS WERE WELL BELOW THE "DESIGN" OF EACH PROGRAM

64.     NCU's plan to extract as much money as possible from doctoral students began with its recruiting and enrollment of prospective students.

65.     NCU recruiting and enrollment employees touted time frames for completion of each doctoral program that were far shorter than the actual "design" of those programs.

66.     While most such promises were verbal, some promises by recruiters and the enrollment office were made in writing. See, e.g., Ex. 1.

---

[25] Ex. 22, NCU Ed.S. Webpage (June 2018).
[26] Ex 23, NCU Ed.S. Curriculum and Teaching Specialization (June 2018).
[27] Ex. 24, NCU Ed.S. Gainful Employment disclosure (April 2018).

CLASS ACTION COMPLAINT
CASE NO. TBD

67.     Moreover, as noted above, NCU promotes recommended or estimated completion times for its doctoral programs that are often less than half of the time that those programs are actually "designed" to take.

68.     NCU does this knowing full well that less than half of its successful graduates manage to complete their programs within the longer "designed" timeframe.

## PLAINTIFF TORRES'S EXPERIENCE AT NORTHCENTRAL

69.     Plaintiff Torres was a student at NCU pursuing her Ed.D. with a Curriculum and Teaching specialization.

70.     Plaintiff Torres enrolled in her doctoral program in Spring 2010. Prior to enrollment, Plaintiff Torres was in communication with a NCU recruiter.

71.     Upon information and belief, Plaintiff Torres's recruiter (as did all recruiters) had a script/materials with specific discussion points including time to completion.

72.     During a phone call and in a follow-up email, about one month before Plaintiff Torres enrolled in the Ed.D. program, Plaintiff Torres's recruiter, Ryan Magpayo, represented that it would take only 3 ½-5 years to complete her degree.

73.     Plaintiff Torres relied on her recruiter's statement that it would take 3 ½-5 years to complete her degree when enrolling at NCU, as well as when re-enrolling each term.

74.     While attending NCU, Plaintiff was an A/A- student.

75.     Upon completion of her doctoral-level courses, Plaintiff Torres began her dissertation.

76.     However, progress on her dissertation remained elusive, not because she failed to work diligently and complete assignments in a timely fashion, but because of the systematic and intentional manner in which NCU delayed the completion of her program.

77.     NCU delayed Plaintiff Torres' program so that it could receive additional tuition payments. From unhelpful dissertation chairs who held up Plaintiff Torres' dissertation process, to numerous changes in her dissertation committee and advisors, NCU placed many impediments in Plaintiff Torres' path to complete her degree.

78.     For example, when Plaintiff Torres' second dissertation chair left NCU (meaning Plaintiff Torres could not advance her dissertation until a third chair was assigned to her), Plaintiff Torres wrote an email emphasizing the endless delays from NCU:

> [A]t this point, **I am extremely concerned about my progress** towards DP and overall program completion. **This will be my 3rd chair and after 3 years of DIS courses, I have yet to get my CP approved**. Based on the maximum 8 year allowance, I am growing increasingly concerned about the ability to finish this in the next 2 years- especially given the amount of time I have spent thus far (3 years of DIS courses now) and only having resubmitted my CP committee for review multiple times. **Why is this taking so long? I have resubmitted drafts after addressing the specific feedback from the committee and my chair each time. Yet somehow, I keep getting feedback that there are major concerns in the CP (without any suggestions on how to fix said 'major concerns').**
>
> Also, in our last communication, Dr. Rosenberger mentioned that he had resubmitted my latest CP to the committee- but he was not clear on exactly when he submitted it. Can you find out and get me the exact date? As you can imagine, every 21 days of allowable review inches me closer to the 8 year allowable maximum and also closer to the next DIS course - which **I am now paying out of pocket for (as I have exhausted the maximum allowable federal student loans)**. **I am just not sure how much longer I can continue to pay for these courses, without having ANY idea of how much longer it will be until I can get to the DP stage - and ultimately finish**.

CLASS ACTION COMPLAINT
CASE NO. TBD

I apologize for the "rant", but I am quickly reaching my frustration point with this process and the continuous changes at NCU. **It's just not the experience I was promised 6 years ago.** Any support or guidance on this is greatly appreciated.

Ex. 25, Torres email to NCU (Jan. 2016) (emphasis added).

79. Even after advising Plaintiff Torres of her chair change and receiving the detailed explanation of her concerns immediately above, NCU still took a month to assign her a new chair, again delaying her completion of the program.

80. Not only was NCU aware that its doctoral programs lasted far longer than it promised prospective students, it also created special programs to allegedly help students get "back on track." However, due to high demand for these programs (*i.e.,* most, if not all NCU doctoral students, exceeded the promised timelines and thus qualified), these programs were insufficiently staffed and filled up quickly.

81. For example, the Ombudsman program was a special program offered to "accelerate" completion of the doctoral program. For those allowed to enroll, NCU offered faster instructor turnaround on feedback and grading (e.g., an admission that NCU's standard 21-day turnaround time was too long and led to doctoral students' delays). As NCU's form email concerning its Ombudsman program explained:

I am writing on behalf of the Ombudsman Office at Northcentral University. The Ombudsman Office was created to work with students of Northcentral University who are nearing their Estimated Graduation Date (EGD). There are multiple options we can explore. One of the newer and most effective options that you can choose is a path to completion that offers students the ability to get back on track toward completing their degree by assigning them a new chair, as well as providing twelve months to complete the dissertation process. All of the details are placed in a learning agreement so that the new Dissertation Chair and the student clearly

15

understand the requirements and milestones left to complete. If you would like more information please respond affirmatively and we will communicate further details.

Ex. 26, Ombudsman email. Why such an "accelerated" program was not offered to *all* doctoral students to ensure they completed on time is baffling.

82.    Distressingly, so many students needed a program "to get back on track" that Plaintiff Torres was told NCU could not offer her an extension to enroll in this program. At a minimum the heavy demand by NCU doctoral students for this Ombudsman program confirms 1) large numbers of NCU students' dissertations were being delayed beyond the times promised by NCU and 2) NCU was aware of these delays.

83.    Had Plaintiff been made aware of the actual time it would take to complete NCU's Ed.D. program, she would not have enrolled or paid the tuition and fees charged by NCU or applied for student loans to finance her education. Similarly, she would not have continued her education at NCU (i.e., re-enrolling each semester).

84.    Further, had NCU not misrepresented the timeline, costs, and hurdles to completing her doctoral program or had it disclosed its true scheme, Plaintiff Torres would not have enrolled in or agreed to pay for the educational services offered by NCU or applied for student loans to finance her education.

85.    Additionally, had NCU not omitted to inform Plaintiff Torres of the "designed" completion time of its Ed.D. program, she would not have agreed to enroll in and pay for the educational services offered by NCU or applied for student loans to finance her education.

86.    Finally, if Plaintiff had been aware of the lack of oversight NCU provided to its faculty, she would not have agreed to enroll in and pay for the educational services offered by NCU or applied for student loans to finance her education.

CLASS ACTION COMPLAINT
CASE NO. TBD

87.     NCU intentionally and unjustly prolonged Plaintiff Torres's work toward her doctoral degree and extracted extra tuition payments from her for classes and coursework that would never have been necessary but for NCU's actions.

88.     As a result, Plaintiff Torres had to expend substantially more time and money than she would have had NCU not engaged in its unlawful conduct.

89.     The delays Plaintiff Torres experienced NCU were also experienced by other doctoral students. Plaintiff Torres, however, is one of the lucky few—she persevered and graduated. Most of NCU's doctoral students do not graduate and leave NCU not with a degree, but with crushing debt and an inability to take future federal loans.

## MISREPRESENTATIONS MADE BY NORTHCENTRAL TO ITS STUDENTS, AND OMISSIONS WITHHELD

90.     NCU has made and broken many promises to its students as detailed above.

91.     NCU's marketing materials, website, and recruiters have knowingly and routinely promised faster timelines and lower costs to completion than its doctoral programs allow.

92.     NCU failed to disclose the "designed" time of its programs to its students.

93.     NCU failed to disclose the actual time and costs it took to complete its programs.

94.     NCU failed to disclose the number of doctoral students who graduated, while representing or implying a false doctoral student graduation rate. See, e.g., Ex. 3 ("Normal (average) time to complete this 54 credit degree program is 40 months"); Ex. 4 ("Students…who maintain continuous enrollment can expect to complete the program in 47 months.").

95.     Even after having a duty to disclose accurate information through its Gainful Employment disclosures, NCU still misrepresented estimated times and costs to completion elsewhere (e.g., in its marketing materials, on its webpages, etc.). These misrepresentations were and are often half of the time-length disclosed in the Gainful Employment documents.

96.     NCU also withheld the actual historical completion rate of its doctoral students from prospective and current students.

## CLASS ACTION ALLEGATIONS

97.     The experiences of Plaintiff Torres at NCU were similar to those experienced by numerous other students attempting to navigate NCU's doctoral programs across all NCU's doctoral disciplines.

98.     NCU's marketing materials (e.g., webpages) available to all prospective students uniformly promised shorter timeframes to program completion than was supported.

99.     Further, when NCU recruiters made personal representations to students about shorter timeframes to graduate, upon information and belief, they did so from recruitment materials/scripts which contained false timelines to completion within them. Such recruitment materials/scripts would provide the basis for such uniform misrepresentations.

100.    Plaintiff requests that the Court certify this lawsuit as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

101.    In the first instance, Plaintiff seeks certification of a nationwide Class under Arizona law, including certification of claims for fraud in the inducement under Arizona law (First Cause of Action), unjust enrichment under Arizona law (Second Cause of Action), breach of contract under Arizona law (Third Cause of Action), violations of the Arizona Uniform Deceptive Trade Practices Act (Fourth Cause of Action) and Breach of Implied Covenant of Good Faith and Fair Dealing under Arizona Law (Fifth Cause of Action). Thus, Plaintiff seeks to certify the following nationwide Class pursuant to Rule 23:

> All current or former students of NCU who enrolled in and paid for a doctoral degree program from NCU from 2006 until 2017 ("Arizona Nationwide Class").

102.   In the second instance, Plaintiff seeks certification of a nationwide Class under California law for misrepresentations made by NCU to students after 2017. These claims include fraud in the inducement under California law (Sixth Cause of Action), unjust enrichment under California law (Seventh Cause of Action), breach of contract under California law (Eighth Cause of Action), violations of the California Business and Professions Code §17200 (Ninth Cause of Action), violations of the Consumer Legal Remedies Act CA Civil Code §1750 (Tenth Cause of Action), Violation of California Business and Professions Code §17500 (Eleventh Cause of Action), and Breach of Implied Covenant of Good Faith and Fair Dealing under California Law (Twelfth Cause of Action). Thus, Plaintiff seeks to certify the following nationwide Class pursuant to Rule 23:

> All current or former students of NCU who enrolled in and paid for an NCU doctoral degree program after 2017 ("California Nationwide Class").

103.   In the alternative, should the Court decide not to certify a nationwide class under Arizona and California law, Plaintiff Torres seeks certification of state classes for each additional Plaintiff according to their state of residency. As Plaintiff Torres resided in both New York and New Jersey, she seeks alternative state claims for fraud in the inducement under New Jersey law (Thirteenth Cause of Action), unjust enrichment under New Jersey law (Fourteenth Cause of Action), breach of contract under New Jersey law (Fifteenth Cause of Action), breach of implied covenant of good faith and fair dealing under New Jersey Law (Sixteenth Cause of Action), violations of the New Jersey's Consumer Fraud Act 56:8 (Seventeenth Cause of Action), for fraud in the inducement under New York law (Eighteenth Cause of Action), unjust enrichment under New York law (Nineteenth Cause of Action), breach of contract under New York law (Twentieth Cause of Action), breach of implied covenant of good faith and fair dealing under New York law (Twenty-First Cause of Action) and violations of the New York Consumer Protection Act (Twenty-Second Cause of Action). Thus, in the

alternative, Plaintiff Torres seeks to certify the following New Jersey and New York Subclasses pursuant to Rule 23:

> All current or former students of NCU who enrolled in and paid for a doctoral degree program from NCU from 2006 to the current day while residing in the state of New Jersey ("New Jersey Sub-Class").

> All current or former students of NCU who enrolled in and paid for a doctoral degree program from NCU from 2006 to the current day while residing in the state of New York ("New York Sub-Class").

104. Numerosity: Upon information and belief, Class members number in at least the thousands. As a result, the Class is so numerous that joinder of all members in a single action is impracticable. The Class should be readily identifiable from academic records and enrollment records of NCU. The disposition of these claims will provide substantial benefits to the Class.

105. Commonality: There is a well-defined community of interest and common questions of law and fact which predominate over any questions affecting only individual Class members. These common legal and factual questions, which will generate common answers that are apt to drive the resolution of the litigation, do not vary between Class members. These common questions may be determined without reference to individual circumstances and will provide common answers. The following represent a non-exhaustive list of common questions:

    a. Whether NCU maintains institutional control over its doctoral programs;
    b. Whether, with knowledge of the "designed" lengths of time for NCU's various doctoral programs, NCU promised potential and current students false times to completion of NCU's doctoral programs;
    c. Whether NCU constructed and implemented a system that caused its doctoral programs to last longer than represented so that NCU could generate additional revenue though tuition payments;
    d. Whether NCU has been unjustly enriched by its conduct at the expense of the Class;
    e. Whether NCU breached its contracts with the Class;
    f. Whether NCU violated consumer protection statues by its conduct toward the Class; and

g.  Whether, because of NCU 's conduct, Plaintiff and the Class are entitled to damages, restitution, equitable relief and/or other relief, and, if so, the amount and nature of such relief.

106.    Typicality: Plaintiff Torres's claims are typical of the claims of the Class. Plaintiff Torres and all Class members were injured by the same wrongful practices in which NCU has engaged. Further, Plaintiff Torres and Class seek relief based on the same legal theories. There may be differences in the amount of damages sustained by each member of the Class; however, class wide and individual damages can be determined readily. Individual damages issues will not bar Class certification.

107.    Adequacy of Representation: Plaintiff Torres will fairly and adequately protect and pursue the interests of the Class. Plaintiff Torres understands the nature of the claims herein, her role in the proceedings, and has and will vigorously represent the Class. Plaintiff Torres has retained Class counsel who are experienced in and qualified in prosecution of consumer protection class actions and other forms of complex litigation. Neither Plaintiff Torres, nor her attorneys, have interests which are contrary to or conflict with those of the Class.

108.    Predominance and Superiority: A class action is superior to all other available methods of adjudication of this lawsuit. Because individual litigation of the claims of Class members is economically infeasible and judicially impracticable, the class action device is the only way to facilitate adjudication of Plaintiff Torres's and the Class's claims. Further, due to the conduct of NCU, Plaintiff Torres and the Class have significant debt burdens from their time at NCU and cannot afford to hire counsel to pursue their claims on an hourly-fee basis. Even assuming individual Class members could afford it, the likelihood of individual claims being pursued by the Class members is remote given the high indebtedness the students have (thus needing to work full time to pay for the damage caused by NCU) as well as fear of reprisals by NCU for students still enrolled in NCU doctoral programs. Also,

while the aggregate damages sustained by the Class are in the tens to hundreds of millions, the individual damages incurred by each Class member resulting from NCU's wrongful conduct are not significant enough to proceed individually under even a contingency model. Even then, the burden on the judicial system would be unjustifiable considering the class action device. Individual Class members do not have significant interest in individually controlling the prosecution of separate actions and individualized litigation could result in varying, inconsistent, or contradictory judgments. Further, some of the Class are currently students at NCU and fear if they are named parties, there will be reprisals. Plaintiff knows of no reason that this litigation should not proceed as a class action.

109.    Manageability: A class action is manageable here, and if necessary to preserve the case as a class action, the Court itself can redefine the Class or Subclasses, create additional subclasses, or both.

110.    The nature of notice to the Class is contemplated to be by direct mail upon certification of the Class or, if such notice is not practicable, by best notice possible under the circumstances including, inter alia, email, publication in major newspapers, and maintenance of a website.

## TOLLING AND ESTOPPEL

111.    Plaintiff Torres's causes of action did not arise until Plaintiff discovered, or by the exercise of reasonable diligence should have discovered, that she was injured by NCU's intentional and deliberate scheme. Plaintiff Torres did not and could not have discovered the intentional scheme through reasonable diligence.

112.    The applicable statutes of limitations have been tolled by NCU 's knowing and active concealment of the material facts regarding its scheme to intentionally prolong the dissertation process for its doctoral students.

CLASS ACTION COMPLAINT
CASE NO. TBD

113.    NCU kept Plaintiff Torres and the Class ignorant of the vital information essential to pursue their claims, without any fault or lack of diligence on the part of Plaintiff Torres and Class members.

114.    NCU was and is under a continuous duty to disclose to Plaintiff Torres and the Class the true nature of the scheme that it has created and implemented to prolong its doctoral programs.

115.    At all relevant times, and continuing to this day, NCU knowingly, affirmatively, and actively misrepresented and concealed the true character, quality, and nature of its scheme.

116.    Based on the foregoing, NCU is estopped from relying on any statutes of limitation in defense of this action. NCU is also estopped from relying on any statutes of limitation in defense of this action because it failed to disclose the scheme prior to accepting each tuition payment in exchange for the provision of educational services.

117.    Pursuant to the doctrines of Equitable Tolling, Equitable Estoppel, Fraudulent Concealment and the Discovery Rule, the period for bringing claims shall not be barred due to any statute of limitations or statute of repose. With respect to each cause of action asserted herein, Plaintiff Torres expressly pleads Equitable Tolling, Equitable Estoppel, Fraudulent Concealment and the Discovery Rule and their application thereto.

118.    All conditions precedent to the filing of this Class Action Complaint have been satisfied. This action has been filed prior to the expiration of any applicable statute of limitations or statute of repose.

## **CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**Fraud in the Inducement Against NCU**
**(Under Arizona Law on Behalf of the Arizona Nationwide Class)**

CLASS ACTION COMPLAINT
CASE NO. TBD

119. Plaintiff brings this cause of action on behalf of a nationwide Class under Arizona common law.

120. Plaintiff realleges and incorporates the preceding allegations by reference as if set forth fully herein.

121. NCU made actual or implied false representations concerning the cost and time to completion for its doctoral degree programs while concealing the truth from prospective and current students.

122. NCU had a duty to disclose that NCU's doctoral programs were designed to take much longer than NCU represented.

123. NCU concealed how long its doctoral programs would take to complete.

124. For example, NCU intentionally misled Plaintiff Torres with statements that the program would take a shorter timeframe than it was designed to take.

125. Similar, if not identical, false representations and omissions were also made to the Arizona Nationwide Class about their degree programs via recruiters, in NCU marketing materials, and on NCU webpages.

126. NCU was aware of the falsity of its representations, or at a minimum had an utter disregard for their truthfulness.

127. NCU intended students to rely upon these representations because they were included in marketing materials, on its website, and personally to students through recruiters.

128. Plaintiff and the Arizona Nationwide Class relied upon NCU's misrepresentations when enrolling at NCU and when re-enrolling term to term.

129. Plaintiff and the Arizona Nationwide Class were justified in relying upon these representations.

CLASS ACTION COMPLAINT
CASE NO. TBD

130.    NCU made these representations to defrauding Plaintiff Torres and the Arizona Nationwide Class.

131.    Plaintiff Torres and the Arizona Nationwide Class were injured by relying on these false representations and omissions because, had NCU been truthful about the program length and costs for NCU's doctoral programs, students would not have enrolled at NCU.

132.    Plaintiff Torres and the Arizona Nationwide Class were harmed by incurring tuition costs, fees, and other educational expenses, as well as student loan debt (including costs of living) to cover those costs.

**SECOND CAUSE OF ACTION**
**Unjust Enrichment Against NCU**
**(Under Arizona Law on Behalf of the Arizona Nationwide Class)**

133.    Plaintiff Torres realleges and incorporates the preceding allegations by reference as if set forth fully herein.

134.    Plaintiff Torres brings this cause of action on behalf of a Nationwide Class under Arizona common law.

135.    NCU has engaged in unjust conduct to the detriment of Plaintiff Torres and each member of the Arizona Nationwide Class.

136.    Plaintiff Torres and each member of the Arizona Nationwide Class provided significant value to NCU in the form of tuition and costs payments for doctoral program courses.

137.    NCU appreciated or had knowledge of the benefit received by retaining the money paid by Plaintiff Torres and each member of the Arizona Nationwide Class.

138.    Although NCU accepted the tuition payments and retained and received benefit therefrom, it did not provide students with the doctoral programs that were promised and expected in connection with the payment of tuition and costs. On the contrary, NCU intentionally and deliberately

extracted tuition and costs from its doctoral students beyond the amount promised it would take to complete their respective degree programs. NCU has intentionally and knowingly created and implemented doctoral programs fraught with inefficiencies, all of which is done without any honesty or transparency by NCU regarding the actual time and expense that doctoral students will expend to complete their degrees.

139.    This unjust conduct on the part of NCU has resulted in its doctoral students enrolling in more courses than would be necessary had NCU not acted unjustly, and incurring significant additional tuition and costs as well as additional loans (for tuition and fees, costs of living, etc.). It has also caused certain Arizona Nationwide Class members to stop pursuing their doctoral degrees altogether.

140.    Despite their inequitable conduct, NCU has retained the payments made by NCU doctoral students pursuing their degree.

141.    As a result, NCU has been unjustly enriched to the detriment of Plaintiff Torres and the members of the Arizona Nationwide Class.

### THIRD CAUSE OF ACTION
### Breach of Contract Against NCU
### (Under Arizona Law on Behalf of the Arizona Nationwide Class)

142.    Plaintiff Torres realleges and incorporates the preceding allegations by reference as if set forth fully herein.

143.    Plaintiff Torres brings this cause of action on behalf of a Nationwide Class under Arizona common law. NCU has systematically violated its contracts with Plaintiff Torres and each member of the Arizona Nationwide Class.

144.    Plaintiff Torres and each member of the Arizona Nationwide Class contracted with NCU to receive doctoral educational services. Implied in each contract was a covenant of good faith and fair dealing.

145. As part of the contract, NCU promised, inter alia, that, in connection with providing doctoral educational services (1) NCU employees including dissertation/doctoral study committee members would work as a team, directly guiding students through the various stages of the dissertation process and (2) their respective programs could be completed in the promised time and for the promised costs.

146. Rather than provide doctoral educational services as per its contractual agreement, NCU knowingly and intentionally created and implemented doctoral programs fraught with inefficiencies, meant to ensure that students received neither adequate resources, nor the timely responses and attention that they were promised. All of this was done without honesty or transparency by NCU regarding the actual length of time their doctoral programs would take and the expense that would be incurred by its doctoral students to complete their degrees (if they were fortunate enough to complete their doctoral degrees). The policy implemented by NCU breached its contracts with Plaintiff Torres and the Arizona Nationwide Class.

147. Plaintiff Torres and each member of the Arizona Nationwide Class provided significant value to NCU in the form of tuition payments and fees for their respective doctoral programs as contracted.

148. Furthermore, Plaintiff Torres and each member of the Arizona Nationwide Class complied with their obligations under their contracts. To the extent that they did not comply with their obligations under their contracts, it was solely the result of conduct engaged in by NCU.

149. The breach of contract on the part of NCU has resulted in NCU's doctoral students enrolling in more courses than would be necessary if NCU had honored its contract and, in many instances, caused Arizona Nationwide Class members to stop pursuing their education.

CLASS ACTION COMPLAINT
CASE NO. TBD

150.     Despite its knowing and intentional breach of its contracts, NCU has retained the tuition and other payments made by Plaintiff Torres and the members of the Arizona Nationwide Class.

151.     NCU has breached its contracts for doctoral education services with Plaintiff Torres and each member of the Arizona Nationwide Class. NCU's breach has caused damage to Plaintiff Torres and each member of the Arizona Nationwide Class in the form of additional and unexpected tuition payments, other costs, and student loans and, in many instances, stopping the pursuit of their education altogether, which caused them to be further damaged in the amount of wasted tuition payments they made before being forced to withdraw from NCU's doctoral program.

152.     Moreover, NCU has breached its contracts with Plaintiff Torres and each member of the Arizona Nationwide Class to provide doctoral educational services to them by engaging in systematic conduct such that it has failed to honor the covenant of good faith and fair dealing implied in every contract. NCU has engaged in unreasonable conduct that was entirely inconsistent with the reasonable expectations of Plaintiff Torres and each member of the Arizona Nationwide Class. NCU has breached its contracts for doctoral education services with Plaintiff Torres and each member of the Arizona Nationwide Class. NCU's breach has caused damage to Plaintiff Torres and each member of the Arizona Nationwide Class in the form of additional and unexpected tuition payments, other costs, and student loans and, in many instances, stopping the pursuit of their education altogether, which caused them to be further damaged in the amount of wasted tuition payments they made before being forced to withdraw from NCU's doctoral program.

### FOURTH CAUSE OF ACTION
### Violation of Arizona Consumer Fraud Act, A.R.S. § 44-1521 et seq.
### Against NCU
### (Arizona Nationwide Class)

153.     Plaintiff Torres realleges and incorporates the preceding allegations by reference as if set forth fully herein.

CLASS ACTION COMPLAINT
CASE NO. TBD

154.    Plaintiff brings this cause of action on behalf of the Arizona Nationwide Class. NCU have engaged in unfair, unlawful, and fraudulent business practices, as set forth above.

155.    Arizona Rev. Stat. § 44-1522 specifically prohibits the use of unfair or deceptive trade practices in connection with a consumer transaction. Specifically, § 44-1522 provides that: "The act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice."

156.    Students paying tuition and costs so as attend NCU and to enroll and re-enroll term-to-term in doctoral programs constitute consumer transactions.

157.    By engaging in the acts and practices described in this complaint, NCU has committed one or more acts of unfair and deceptive trade practices. For example, NCU represented that NCU's doctoral services (1) have characteristics that they do not have and (2) are of a particular standard, quality, or grade of which they are not. NCU also (3) advertises NCU's doctoral services with intent not to sell them as advertised and (4) engages in conduct which similarly creates a likelihood of confusion or of misunderstanding.

158.    For example, NCU misrepresented that their respective programs could be completed in the promised time and for the promised cost as described in this Complaint.

159.    NCU also knowingly concealed, omitted and otherwise failed to state material facts about NCU's doctoral education services that would tend to, and did, in fact, deceive students. Specifically, NCU falsely represented the time and tuition costs of obtaining a doctoral degree, not only knowing that such representations were false, but also with no intent to offer such services to its

students. NCU also failed to disclose that it intentionally and deliberately prolonged its doctoral programs as a means of improperly extracting tuition and generating revenue. NCU further failed to disclose that it knowingly created and implemented a doctoral program that is fraught with inefficiencies, meant to ensure that students do not receive the timely responses and attention that they were promised.

160.    NCU knew that its doctoral programs were and continue to be systematically prolonged by the violations set forth herein.

161.    The misrepresentations and omissions were material to Plaintiff Torres and the Arizona Nationwide Class.

162.    NCU 's unfair and deceptive trade practices and acts occurred and continue to occur repeatedly during its business. These actions constitute unfair and deceptive trade practices.

163.    Plaintiff Torres and the Arizona Nationwide Class relied on these representations and omissions when enrolling at NCU and each semester when re-enrolling. Furthermore, NCU intended that Plaintiff Torres and the Arizona Nationwide Class would rely on the representations and omissions.

164.    As a direct and proximate result of NCU 's unfair and deceptive practices and acts, Plaintiff Torres and the Arizona Nationwide Class have suffered and will continue to suffer actual damages. Had Plaintiff Torres and the Arizona Nationwide Class been aware of the misrepresentations and omissions, they would not have paid tuition to NCU or incurred additional costs and student loans for the educational services that NCU purported to provide.

**FIFTH CAUSE OF ACTION**
**Breach of Implied Covenant of Good Faith and Fair Dealing Against NCU**
**(Under Arizona Law on Behalf of the Arizona Nationwide Class)**

165. Plaintiff Torres realleges and incorporates the preceding allegations by reference as if set forth fully herein.

166. Plaintiff Torres brings this cause of action on behalf of the Arizona Nationwide Class under Arizona common law. NCU has systematically violated its contracts with Plaintiff Torres and each member of the Arizona Nationwide Class.

167. Plaintiff and each member of the Arizona Nationwide Class contracted with NCU to receive doctoral education services.

168. Implied in each contract was a covenant of good faith and fair dealing.

169. Plaintiff and each member of the Arizona Nationwide Class provided value to NCU in the form of tuition payments for their respective doctoral programs as contracted.

170. By the scheme and conduct detailed herein, NCU has breached the implied duty of good faith and fair dealing implied in its contracts.

171. This breach on the part of NCU has resulted in NCU doctoral students being damaged because they were required to enroll in courses that would not have otherwise been necessary, thereby necessitating substantial additional tuition payments, other costs, and student loans. In addition, many students have been forced to stop pursuing their education.

**SIXTH CAUSE OF ACTION**
**Fraud in the Inducement Against NCU**
**(Under California Law on Behalf of the California Nationwide Class)**

172. Plaintiff brings this cause of action on behalf of a nationwide Class under California common law.

173. Plaintiff realleges and incorporates the preceding allegations by reference as if set forth fully herein.

174. NCU made actual or implied false representations concerning the cost and time to completion for its doctoral degree programs, while concealing the truth from prospective and current students.

175. NCU had a duty to disclose that NCU's doctoral programs were designed to take much longer than NCU represented.

176. NCU concealed how long its doctoral programs would take to complete.

177. For example, NCU intentionally misled Plaintiff Torres with statements that the program would take a shorter timeframe and cost less than it did.

178. Instead, at the time Plaintiff Torres was recruited and enrolled in her doctoral program, NCU concealed that the program in which she enrolled was designed to take longer and cost more than was represented.

179. Similar, if not identical, false representations and omissions were also made to the California Nationwide Class about their degree programs via recruiters, in NCU marketing materials, and on NCU webpages.

180. NCU was aware of the falsity of its representations, or at a minimum had an utter disregard for their truthfulness. For example, NCU purposefully designed its doctoral programs to last a certain, longer timeframe, despite telling students they would take less time.

181. NCU intended students to rely upon these representations because they were included in marketing materials, on its website, and personally to students through recruiters.

182. Plaintiff and the California Nationwide Class relied upon NCU's misrepresentations when enrolling at NCU and when re-enrolling term to term.

183. Plaintiff and the California Nationwide Class were justified in relying upon these representations.

CLASS ACTION COMPLAINT
CASE NO. TBD

184.    NCU made these representations to defraud Plaintiff Torres and the California Nationwide Class.

185.    Plaintiff Torres and the California Nationwide Class were injured by relying on these false representations and omissions because, had NCU been truthful about the timelines and costs for NCU's doctoral programs, students would not have enrolled at NCU.

186.    Plaintiff Torres and the California Nationwide Class were harmed by incurring tuition costs, fees, and other educational expenses, as well as increased student loan debt (e.g., for tuition, fees, costs of living, etc.).

**SEVENTH CAUSE OF ACTION**
**Unjust Enrichment Against NCU**
**(Under California Law on Behalf of the California Nationwide Class)**

187.    Plaintiff Torres realleges and incorporates the preceding allegations by reference as if set forth fully herein.

188.    Plaintiff Torres brings this cause of action on behalf of a Nationwide Class under California common law.

189.    NCU has engaged in unjust conduct, to the detriment of Plaintiff Torres and each member of the California Nationwide Class.

190.    Plaintiff Torres and each member of the California Nationwide Class provided significant value to NCU in the form of tuition payments for doctoral program courses.

191.    NCU appreciated or had knowledge of the benefit received by retaining the money paid by Plaintiff Torres and each member of the California Nationwide Class.

192.    Although NCU accepted the tuition payments and retained and received benefit therefrom, it did not provide students with the doctoral programs that were promised and expected in connection with the payment of the tuition. On the contrary, NCU intentionally and deliberately

CLASS ACTION COMPLAINT
CASE NO. TBD

extracted tuition from its doctoral students beyond the amount promised it would take to complete their respective degree programs. NCU has intentionally and knowingly created and implemented doctoral programs fraught with inefficiencies, all of which is done without any honesty or transparency by NCU regarding the actual time and expense that doctoral students will expend to complete their degrees.

193.     This unjust conduct on the part of NCU has resulted in its doctoral students enrolling in more courses than would be necessary had NCU not acted unjustly, and incurring significant additional tuition and costs as well as additional loans (for tuition and fees, costs of living, etc.). It has also caused certain California Nationwide Class members to stop pursuing their doctoral degrees altogether.

194.     Despite their inequitable conduct, NCU has retained the payments made by NCU doctoral students pursuing their degree.

195.     As a result, NCU has been unjustly enriched, to the detriment of Plaintiff Torres and the members of the California Nationwide Class.

**EIGHTH CAUSE OF ACTION**
**Breach of Contract Against NCU**
**(Under California Law on Behalf of the California Nationwide Class)**

196.     Plaintiff Torres realleges and incorporates the preceding allegations by reference as if set forth fully herein.

197.     Plaintiff Torres brings this cause of action, on behalf of a Nationwide Class under California common law. NCU has systematically violated its contracts with Plaintiff Torres and each member of the California Nationwide Class.

198.     Plaintiff Torres and each member of the California Nationwide Class contracted with NCU to receive doctoral educational services. Implied in each contract was a covenant of good faith and fair dealing.

199.    As part of the contract, NCU promised, inter alia, that, in connection with providing doctoral educational services (1) dissertation/doctoral study committee members would work as a team, directly guiding students through the various stages of the dissertation process and (2) their respective programs could be completed in the promised time.

200.    Rather than provide doctoral educational services as per its contractual agreement, NCU knowingly and intentionally created and implemented doctoral programs fraught with inefficiencies, meant to ensure that students received neither adequate resources, nor the timely responses and attention that they were promised. All of this was done without honesty or transparency by NCU regarding the actual length of time their doctoral programs would take and the expense that would be incurred by its doctoral students to complete their degrees (if they were fortunate enough to complete their doctoral degrees). The policy implemented by NCU breached its contracts with Plaintiff Torres and the California Nationwide Class.

201.    Plaintiff Torres and each member of the California Nationwide Class provided significant value to NCU in the form of tuition payments and fees for their respective doctoral programs as contracted.

202.    Furthermore, Plaintiff Torres and each member of the California Nationwide Class complied with their obligations under their contracts. To the extent that they did not comply with their obligations under their contracts, it was solely the result of conduct engaged in by NCU.

203.    The breach of contract on the part of NCU has resulted in NCU's doctoral students enrolling in more courses than would be necessary if NCU had honored its contract and, in many instances, caused California Nationwide Class members to stop pursuing their education altogether because of NCU's unlawful conduct.

204.     Despite its knowing and intentional breach of its contracts, NCU has retained the tuition and other payments made by Plaintiff Torres and the members of the California Nationwide Class.

205.     NCU has breached its contracts for doctoral education services with Plaintiff Torres and each member of the California Nationwide Class. NCU's breach has caused damage to Plaintiff Torres and each member of the California Nationwide Class in the form of additional and unexpected tuition payments, other costs, and student loans and, in many instances, stopping the pursuit of their education altogether, which caused them to be further damaged in the amount of wasted tuition payments they made before being forced to withdraw from NCU's doctoral program.

206.     Moreover, NCU has breached its contracts with Plaintiff Torres and each member of the California Nationwide Class to provide doctoral educational services to them by engaging in systematic conduct such that it has failed to honor the covenant of good faith and fair dealing implied in every contract. NCU has engaged in unreasonable conduct that was entirely inconsistent with the reasonable expectations of Plaintiff Torres and each member of the California Nationwide Class. NCU has breached its contracts for doctoral education services with Plaintiff Torres and each member of the California Nationwide Class. NCU's breach has caused damage to Plaintiff Torres and each member of the California Nationwide Class in the form of additional and unexpected tuition payments, other costs, and student loans and, in many instances, stopping the pursuit of their education altogether, which caused them to be further damaged in the amount of wasted tuition payments they made before being forced to withdraw from NCU's doctoral program.

### NINTH CAUSE OF ACTION
### Violations of California Business and Professions Code §17200 on behalf of California Nationwide Class
### (On Behalf of the California Nationwide Class)

207.     Plaintiff Torres brings this cause of action, on behalf of a Nationwide Class under California Business & Professions Code §17200.

36

208.   California Business & Professions Code §17200 prohibits acts of unfair competition, which means and includes any "unlawful, unfair or fraudulent business act or practice" and any act prohibited by Cal. Bus. & Prof. Code §17500.

209.   NCU violated Cal. Bus. & Prof. Code §17200's prohibition against engaging in an "unlawful" business act or practice by, inter alia, making the material misrepresentations set forth in this Complaint.

210.   NCU violated Cal. Bus. & Prof. Code §17200's prohibition against engaging in a "fraudulent" business act or practice by, inter alia, disseminating, through common advertising, untrue statements about NCU's doctoral programs times-to-completion and costs that have a tendency to mislead the public and making numerous common material misrepresentations with the intent to induce reliance by consumers to enroll and re-enroll term-to-term in NCU doctoral programs.

211.   The foregoing conduct also constitutes "unfair" business acts and practices within the meaning of Cal. Bus. & Prof. Code §17200. NCU's practices offend public policy and are unethical, oppressive, unscrupulous and violate the laws stated. NCU's conduct caused and continues to cause substantial injury to Plaintiff and Class members. The gravity of NCU's alleged wrongful conduct outweighs any purported benefits attributable to such conduct. There were also reasonably available alternatives to NCU to further its business interests.

212.   Plaintiff and California Nationwide Class members have suffered injury in fact and have lost money because of NCU's unlawful, fraudulent, and unfair business practices and are therefore entitled to the relief available under Cal. Bus. & Prof. Code §17200, et seq.

**TENTH CAUSE OF ACTION**
**Violations of the Consumer Legal Remedies Act, California Civil Code §1750 et seq.**
**(On behalf of California Nationwide Class)**

37

213. Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

214. Plaintiff Torres brings this cause of action, on behalf of a Nationwide Class under the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §1750, et seq.

215. Plaintiff and the California Nationwide Class are consumers as defined by Cal. Civ. Code §1761(d). NCU's doctoral programs constitute "services" and/or "products" as defined by Cal. Civ. Code §1761(a) and (b). At all times relevant hereto, NCU constituted "persons" as that term is defined in Cal. Civ. Code §1761(c), and Plaintiff's and California Nationwide Class members' payment of tuition and fees to enroll and re-enroll at NCU constitute "transactions," as that term is defined in Cal. Civ. Code §1761(e).

216. NCU violated and continues to violate the CLRA by engaging in the following deceptive practices specifically proscribed by Cal. Civ. Code §1770(a), in transactions with Plaintiff and California Nationwide Class members that were intended to result or which resulted in the sale or lease of goods or services to consumers: (a) in violation of Cal. Civ. Code §1770(a)(5), NCU's acts and practices constitute misrepresentations that its doctoral programs have characteristics, benefits or uses which they do not have; (b) in violation of Cal. Civ. Code §1770(a)(7), NCU misrepresented that its doctoral programs are of particular standard, quality and/or grade, when they are of another; and (c) in violation of Cal. Civ. Code §1770(a)(9), NCU advertised its doctoral programs with the intent not to sell them as advertised or represented.

217. NCU's uniform representations as set forth in this Complaint were false, deceptive, and/or misleading and in violation of the CLRA.

218. Pursuant to Cal. Civ. Code §1782, Plaintiff notified NCU in writing by certified mail of the particular violations of Cal. Civ. Code §1770 alleged herein, and has demanded that NCU rectify

CLASS ACTION COMPLAINT
CASE NO. TBD

the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act. Plaintiff sent this notice by certified mail, return receipt requested, to NCU's principal place of business.

219.    NCU has failed to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days after receipt of the Civil Code §1782 notice, thus Plaintiff seek actual damages and punitive damages for violation of the Act.

220.    In addition, pursuant to Civil Code §1780(a)(2), Plaintiff is entitled to, and therefore seeks, a Court order enjoining the above-described wrongful acts and practices that violate Cal. Civ. Code §1770.

221.    Plaintiff and the California Nationwide Class are also entitled to recover attorneys' fees, costs, expenses, and disbursements pursuant to Cal. Civ. Code §§1780 and 1781.

**ELEVENTH CAUSE OF ACTION**
**Untrue and Misleading Advertising in Violation of Cal. Bus. & Prof.**
**Code §17500 et seq.**
**(On behalf of California Nationwide Class)**

222.    Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

223.    Plaintiff Torres brings this cause of action, on behalf of a Nationwide Class under California Business & Professions Code §17500.

224.    California Business & Professions Code §17500 prohibits various deceptive practices in connection with the dissemination in any manner of representations which are likely to deceive members of the public to purchase products and services such as enrollment and re-enrollment in NCU's doctoral programs.

225.    NCU disseminated, through common advertising, untrue statements about NCU and its doctoral programs as described within this Complaint. NCU knew or should have known that its

CLASS ACTION COMPLAINT
CASE NO. TBD

doctoral programs did not conform to these advertisements or representations regarding its doctoral programs. NCU intended Plaintiff and the California Nationwide Class to rely upon these advertisements and the material misrepresentations set forth therein. Plaintiff and the California Nationwide Class relied upon the advertisements and misrepresentations to their detriment.

226. Because of the foregoing, Plaintiff, and the California Nationwide Class members, are entitled to injunctive and equitable relief and damages in an amount to be proven at trial.

**TWELFTH CAUSE OF ACTION**
**Breach of Implied Covenant of Good Faith and Fair Dealing Against NCU**
**(Under California Law on Behalf of California Nationwide Class)**

227. Plaintiff Torres realleges and incorporates the preceding allegations by reference as if set forth fully herein.

228. Plaintiff Torres brings this cause of action on behalf of a California Nationwide Class under California common law. NCU has systematically violated its contracts with Plaintiff Torres and each member of the California Nationwide Class.

229. Plaintiff and each member of the California Nationwide Class contracted with NCU to receive doctoral education services.

230. Implied in each contract was a covenant of good faith and fair dealing.

231. Plaintiff and each member of the California Nationwide Class provided value to NCU in the form of tuition and fee payments for their respective doctoral programs as contracted.

232. By the scheme and conduct detailed herein, NCU has breached the implied duty of good faith and fair dealing implied in its contracts.

233. This breach on the part of NCU has resulted in NCU doctoral students being damaged because they were required to enroll in courses that would not have otherwise been necessary, thereby

CLASS ACTION COMPLAINT
CASE NO. TBD

necessitating substantial additional tuition payments and other costs, and student loans (for tuition, fees, costs of living, etc.). In addition, many students have been forced to stop pursuing their education.

## THIRTEENTH CAUSE OF ACTION
### Fraud in the Inducement Against NCU
### (Under New Jersey Law on behalf of alternative New Jersey Sub-Class)

234.    Plaintiff brings this cause of action in the alternative on behalf of a state-wide Subclass under New Jersey common law.

235.    Plaintiff Torres realleges and incorporates the preceding allegations by reference as if set forth fully herein.

236.    NCU made actual or implied false representations concerning the cost and length of time to get a doctoral degree, while concealing the truth from prospective and actual students.

237.    NCU had a duty to disclose that NCU's doctoral programs were designed to take much longer than was represented to prospective students.

238.    Instead, NCU concealed how long NCU's doctoral programs take to complete.

239.    For example, NCU intentionally misled Plaintiff Torres and each member of the New Jersey Subclass with statements that the program would take a shorter timeframe, and that Plaintiff Torres and each member of the New Jersey Subclass would have control over how quickly they could complete the program.

240.    Instead, at the time Plaintiff Torres and each member of the New Jersey Subclass were recruited and enrolled in their respective doctoral degrees, NCU concealed that the programs in which they enrolled were designed to take longer than disclosed.

241.    Similar, if not identical, false representations and omissions were also made to other members of the Subclass about their degree programs via recruiters, in NCU marketing materials, and on NCU webpages.

CLASS ACTION COMPLAINT
CASE NO. TBD

242. NCU also concealed or otherwise omitted information about the actual percentage of students who graduated with doctorates from NCU.

243. Further, NCU informed prospective students and current students that they would have resources available to them, when NCU knew full well that such resources would not be available.

244. These representations were material to Plaintiff Torres and each member of the New Jersey Subclass agreeing to attend NCU.

245. NCU was aware of the falsity of its representations, or at a minimum had an utter disregard for their truthfulness. For example, it purposefully designed NCU's doctoral programs to last a certain, longer timeframe, despite telling students they would take less time.

246. NCU intended students to rely upon these representations because they were included in marketing materials and on their websites.

247. Plaintiff and the New Jersey Subclass relied upon NCU's misrepresentations when enrolling at NCU and when re-enrolling term to term.

248. Plaintiff Torres and each member of the New Jersey Subclass were justified in relying upon these representations.

249. NCU made these representations to defraud Plaintiff Torres and each member of the New Jersey Subclass.

250. Plaintiff Torres and each member of the New Jersey Subclass were injured by relying on these false representations and omissions because, had NCU been truthful about the timelines and costs for NCU's doctoral programs, as well as the annual graduation rate and resources available to them, doctoral students would not have enrolled.

251. Plaintiff Torres and members of the New Jersey Subclass were harmed by incurring tuition costs, other expenses, and student loans (for tuition, fees, costs of living, etc.).

CLASS ACTION COMPLAINT
CASE NO. TBD

## FOURTEENTH CAUSE OF ACTION
### Unjust Enrichment Against NCU
### (Under New Jersey Law on Behalf of Alternative New Jersey Sub-Class)

252.     Plaintiff Torres realleges and incorporates the preceding allegations by reference as if set forth fully herein.

253.     Plaintiff Torres brings this cause of action in the alternative on behalf of a New Jersey Subclass under New Jersey common law. NCU has engaged in unjust conduct, to the detriment of Plaintiff Torres and each member of the New Jersey Subclass.

254.     Plaintiff Torres and each member of the New Jersey Subclass provided significant value to NCU in the form of tuition and fee payments.

255.     NCU appreciated or had knowledge of the benefit received by retaining the money paid by Plaintiff Torres and each member of the New Jersey Subclass.

256.     Although NCU accepted the tuition and fee payments and retained and received benefit therefrom, it did not provide students with the doctoral process that was promised and contemplated in connection with the payment of tuition. To the contrary, NCU intentionally and deliberately used its doctoral programs as a means of improperly extracting tuition and fees and generating revenue. NCU has intentionally and knowingly created and implemented doctoral programs fraught with inefficiencies, meant to ensure that students do not receive the timely responses and attention that they were promised. All of this was done without any honesty or transparency by NCU regarding the actual time and expense that NCU's doctoral students would incur to complete their degrees.

257.     This unjust conduct on the part of NCU has resulted in its doctoral students enrolling in more courses than would be necessary had NCU not acted unjustly and incurring significant additional tuition and costs. It has also caused certain New Jersey Subclass members to stop pursuing their doctoral degrees.

258.     Despite its inequitable conduct, NCU has retained the tuition and other payments made by its doctoral students pursuing their degrees.

259.     As a result, NCU has been unjustly enriched, to the detriment of Plaintiff Torres and the members of the New Jersey Subclass.

## FIFTEENTH CAUSE OF ACTION
### Breach of Contract Against NCU
### (Under New Jersey Law on Behalf of Alternative New Jersey Sub-Class)

260.     Plaintiff Torres realleges and incorporates the preceding allegations by reference as if set forth fully herein.

261.     Plaintiff Torres brings this cause of action in the alternative on behalf of a New Jersey Subclass under New Jersey common law. NCU has systematically violated its contracts with Plaintiff Torres and each member of the New Jersey Subclass.

262.     Plaintiff Torres and each member of the New Jersey Subclass contracted with NCU to receive doctoral educational services. Implied in each contract was a covenant of good faith and fair dealing.

263.     As part of the contract, NCU promised, inter alia, that, in connection with providing doctoral educational services (1) dissertation/doctoral study committee members would work as a team, directly guiding students through the various stages of the dissertation process including the proposal; and (2) their respective programs could be completed in the promised time.

264.     Rather than provide doctoral educational services as per its contractual agreement, NCU knowingly and intentionally created and implemented a process fraught with inefficiencies, meant to ensure that students receive neither adequate resources, nor the timely responses and attention that they were promised. All of this was done without honesty or transparency by NCU regarding the actual length of time the doctoral programs would take and the expense that would be incurred by its doctoral

students to complete their degrees (if they were fortunate enough to complete their doctoral degrees). The policy implemented by NCU breached its contracts with Plaintiff Torres and the New Jersey Subclass Class.

265.    Plaintiff Torres and each member of the New Jersey Subclass provided significant value to NCU in the form of tuition payments and fees as contracted.

266.    Furthermore, Plaintiff Torres and each member of the New Jersey Subclass complied with their obligations under their contracts. To the extent that they did not comply with their obligations under their contracts, it was solely the result of conduct engaged in by NCU.

267.    The breach of contract on the part of NCU has resulted in NCU's doctoral students enrolling in more courses than would be necessary if NCU had honored its contract and, in many instances, caused New Jersey Subclass members to stop pursuing their education altogether because of NCU's unlawful conduct.

268.    Despite its knowing and intentional breach of its contracts, NCU has retained the tuition and other payments made by Plaintiff Torres and the members of the New Jersey Subclass.

269.    NCU has breached its contracts for doctoral education services with Plaintiff Torres and each member of the New Jersey Subclass Class. NCU's breach has caused damage to Plaintiff Torres and each member of the New Jersey Subclass Class in the form of additional and unexpected tuition payments, other costs, and student loans and, in many instances, stopping the pursuit of their education, which caused them to be further damaged in the amount of wasted tuition payments they made before being forced to withdraw from NCU's doctoral program.

270.    Moreover, NCU has breached its contracts with Plaintiff Torres and each member of the Class to provide doctoral educational services to them by engaging in systematic conduct such that it has failed to honor the covenant of good faith and fair dealing implied in every contract. NCU has

engaged in unreasonable conduct that was entirely inconsistent with the reasonable expectations of Plaintiff Torres and each member of the New Jersey Subclass Class. NCU has breached its contracts for doctoral education services with Plaintiff Torres and each member of the New Jersey Subclass. NCU's breach has caused damage to Plaintiff Torres and each member of the New Jersey Subclass in the form of additional and unexpected tuition payments, other costs, and student loans and, in many instances, stopping the pursuit of their education altogether, which caused them to be further damaged in the amount of wasted tuition payments they made before being forced to withdraw from NCU's doctoral program.

## SIXTEENTH CAUSE OF ACTION
### Breach of Implied Covenant of Good Faith and Fair Dealing Against NCU
### (Under New Jersey Law on Behalf of Alternative New Jersey Subclass)

271.    Plaintiff realleges and incorporates the preceding allegations by reference as if set forth fully herein.

272.    Plaintiff Torres brings this cause of action in the alternative on behalf of a New Jersey Subclass under California common law. NCU has systematically violated its contracts with Plaintiff Torres and each member of the New Jersey Subclass.

273.    Plaintiff Torres and each member of the New Jersey Subclass contracted with NCU to obtain doctoral education services.

274.    Implied in each contract was a covenant of good faith and fair dealing.

275.    Plaintiff Torres and each member of the New Jersey Subclass provided value to NCU in the form of tuition payments and other costs for their doctoral programs as contracted.

276.    By the scheme and conduct detailed herein, NCU has breached the implied duty of good faith and fair dealing implied in its contracts.

CLASS ACTION COMPLAINT
CASE NO. TBD

277. This breach on the part of NCU has resulted in NCU doctoral students being damaged because they were required to enroll in courses that would not have otherwise been necessary, thereby necessitating substantial additional tuition payments, other costs, and student loans. In addition, many students have been forced to stop pursuing their education.

### SEVENTEENTH CAUSE OF ACTION
### Violation of New Jersey's Consumer Fraud Act 56:8 (Unconscionable Commercial Practices)
### (On Behalf of Alternative New Jersey Sub-Class)

278. Plaintiffs repeat and allege each and every allegation set forth in paragraphs above and incorporate said allegations as if fully set forth herein.

279. Plaintiff brings this cause of action in the alternative on behalf of an New Jersey Sub-Class.

280. New Jersey's Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-2 prohibits:

The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing [] concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merch subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby...

281. The CFA defines "merchandise" as including "any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale." N.J.S.A. 56:8-1(c).

282. As described in this Complaint, NCU has engaged in the advertisement and sale of services within the meaning of N.J.S.A. 56:8-1(c), including through its website, recruiters, and other materials.

283. NCU has engaged in unconscionable commercial practices including, but not limited to, misrepresenting the length of time and cost it would take to complete a doctoral degree.

284.     NCU's advertisement and sale of its doctoral programs to New Jersey consumers constitutes multiple unconscionable commercial practice as described in this Complaint.

285.     Each unconscionable commercial practice by NCU constitutes a separate violation of the CFA.

286.     Further, NCU violates N.J.S.A. 56:8-2.2. by knowingly offering much shorter/less expensive doctoral programs than NCU's programs were designed to be.

287.     By engaging in the acts and practices described in this complaint, NCU has committed one or more acts of unfair and deceptive trade practices.

288.     For example, NCU misrepresented to prospective and current doctoral students that their respective programs could be completed in a shorter time and for less cost than the programs actual length-of-time and costs.

289.     NCU also knowingly concealed, omitted and otherwise failed to state material facts about NCU's doctoral education services that would tend to, and did, in fact, deceive students. Specifically, NCU falsely represented the time and tuition costs of obtaining a doctoral degree, not only knowing that such representations were false, but also with no intent to offer such services to its students. NCU also failed to disclose that it intentionally and deliberately used its doctoral programs as a means of improperly extracting tuition and generating revenue. NCU further failed to disclose that it knowingly created and implemented doctoral programs that are fraught with inefficiencies, meant to ensure that students do not receive the timely responses and attention that they were promised.

290.     NCU knew that its doctoral programs were and continue to be systematically prolonged by the violations set forth herein.

291.     The misrepresentations and omissions were material to Plaintiff Torres and the members of the New Jersey Subclass.

292.    NCU 's unfair and deceptive trade practices and acts occurred and continue to occur repeatedly during its business. These actions constitute unfair and deceptive trade practices.

293.    Plaintiff Torres and members of the New Jersey Subclass relied on these representations and omissions while pursuing their doctoral degrees. Furthermore, NCU intended that Plaintiff Torres and members of the New Jersey Subclass would rely on the representations and omissions.

294.    As a direct and proximate result of NCU 's unfair and deceptive practices and acts, Plaintiff Torres and the New Jersey Subclass have suffered and will continue to suffer actual damages. Had Plaintiff Torres and the members of the New Jersey Subclass been aware of the misrepresentations and omissions, they would not have paid tuition to NCU or incurred additional costs and student loans (e.g., for tuition, fees, costs of living, etc.) for the educational services that NCU purported to provide.

**EIGHTEENTH CAUSE OF ACTION**
**Fraud in the Inducement Against NCU**
**(Under New York Law on Behalf of Alternative New York Sub-Class)**

295.    Plaintiff brings this cause of action in the alternative on behalf of a state-wide Subclass under New York common law.

296.    Plaintiff Torres realleges and incorporates the preceding allegations by reference as if set forth fully herein.

297.    NCU made actual or implied false representations concerning the cost and length of time to get a doctoral degree, while concealing the truth from prospective and actual students.

298.    NCU had a duty to disclose that NCU's doctoral programs were designed to take much longer than was represented to prospective students.

299.    Instead, NCU concealed how long NCU's doctoral programs take to complete.

300.    For example, NCU intentionally misled Plaintiff Torres and each member of the New York Subclass with statements that the program would take a shorter timeframe, and that Plaintiff

Torres and each member of the New York Subclass would have control over how quickly they could complete the program.

301. Instead, at the time Plaintiff Torres and each member of the New York Subclass were recruited and enrolled in their respective doctoral degrees, NCU concealed that the programs in which they enrolled were designed to take longer than disclosed.

302. Similar, if not identical, false representations and omissions were also made to other members of the Subclass about their degree programs via recruiters, in NCU marketing materials, and on NCU webpages.

303. NCU also concealed or otherwise omitted information about the actual percentage of students who graduated with doctorates from NCU.

304. Further, NCU informed prospective students and current students that they would have resources available to them, when NCU knew full well that such resources would not be available.

305. These representations were material to Plaintiff Torres and each member of the New York Subclass agreeing to attend NCU.

306. NCU was aware of the falsity of its representations, or at a minimum had an utter disregard for their truthfulness. For example, it purposefully designed NCU's doctoral programs to last a certain, longer timeframe, despite telling students they would take less time.

307. NCU intended students to rely upon these representations because they were included in marketing materials and on their websites.

308. Plaintiff and the New York Subclass relied upon NCU's misrepresentations when enrolling at NCU and when re-enrolling term to term.

309. Plaintiff Torres and each member of the New York Subclass were justified in relying upon these representations.

CLASS ACTION COMPLAINT
CASE NO. TBD

310.     NCU made these representations to defraud Plaintiff Torres and each member of the New York Subclass.

311.     Plaintiff Torres and each member of the New York Subclass were injured by relying on these false representations and omissions because, had NCU been truthful about the timelines and costs for NCU's doctoral programs, as well as the annual graduation rate and resources available to them, doctoral students would not have enrolled.

312.     Plaintiff Torres and members of the New York Subclass were harmed by incurring tuition costs, other expenses, and student loans (e.g., for tuition, fees, costs of living, etc.).

### NINETEENTH CAUSE OF ACTION
### Unjust Enrichment Against NCU
### (Under New York Law on Behalf of Alternative New York Sub-Class)

313.     Plaintiff Torres realleges and incorporates the preceding allegations by reference as if set forth fully herein.

314.     Plaintiff Torres brings this cause of action in the alternative on behalf of a New York Subclass under New York common law. NCU has engaged in unjust conduct, to the detriment of Plaintiff Torres and each member of the New York Subclass.

315.     Plaintiff Torres and each member of the New York Subclass provided significant value to NCU in the form of tuition and fee payments.

316.     NCU appreciated or had knowledge of the benefit received by retaining the money paid by Plaintiff Torres and each member of the New York Subclass.

317.     Although NCU accepted the tuition and fee payments and retained and received benefit therefrom, it did not provide students with a doctoral process that was promised and contemplated in connection with the payment of the tuition. To the contrary, NCU intentionally and deliberately used its doctoral programs as a means of improperly extracting tuition and generating revenue. NCU has

intentionally and knowingly created and implemented doctoral programs fraught with inefficiencies, meant to ensure that students do not receive the timely responses and attention that they were promised. All of this was done without any honesty or transparency by NCU regarding the actual time and expense that NCU's doctoral students would incur to complete their degrees.

318. This unjust conduct on the part of NCU has resulted in its doctoral students enrolling in more courses than would be necessary had NCU not acted unjustly and incurring significant additional tuition and costs. It has also caused certain New York Subclass members to stop pursuing their doctoral degrees altogether.

319. Despite its inequitable conduct, NCU has retained the tuition and other payments made by its doctoral students pursuing their degrees.

320. As a result, NCU has been unjustly enriched, to the detriment of Plaintiff Torres and the members of the New York Subclass.

## TWENTIETH CAUSE OF ACTION
### Breach of Contract Against NCU
### (Under New York Law on Behalf of Alternative New York Sub-Class)

321. Plaintiff Torres realleges and incorporates the preceding allegations by reference as if set forth fully herein.

322. Plaintiff Torres brings this cause of action in the alternative on behalf of a New York Subclass under New York common law. NCU has systematically violated its contracts with Plaintiff Torres and each member of the New York Subclass.

323. Plaintiff Torres and each member of the New York Subclass contracted with NCU to receive doctoral educational services. Implied in each contract was a covenant of good faith and fair dealing.

324.    As part of the contract, NCU promised, inter alia, that, in connection with providing doctoral educational services (1) dissertation/doctoral study committee members would work as a team, directly guiding students through the various stages of the dissertation process including the proposal; and (2) their respective programs could be completed in the promised time.

325.    Rather than provide doctoral educational services as per its contractual agreement, NCU knowingly and intentionally created and implemented a process fraught with inefficiencies, meant to ensure that students receive neither adequate resources, nor the timely responses and attention that they were promised. All of this was done without honesty or transparency by NCU regarding the actual length of time the doctoral programs would take and the expense that would be incurred by its doctoral students to complete their degrees (if they were fortunate enough to complete their doctoral degrees). The policy implemented by NCU breached its contracts with Plaintiff Torres and the New York Subclass Class.

326.    Plaintiff Torres and each member of the New York Subclass provided significant value to NCU in the form of tuition payments and fees as contracted.

327.    Furthermore, Plaintiff Torres and each member of the New York Subclass complied with their obligations under their contracts. To the extent that they did not comply with their obligations under their contracts, it was solely the result of conduct engaged in by NCU.

328.    The breach of contract on the part of NCU has resulted in NCU's doctoral students enrolling in more courses than would be necessary if NCU had honored its contract and, in many instances, caused New York Subclass members to stop pursuing their education because of NCU's unlawful conduct.

329.    Despite its knowing and intentional breach of its contracts, NCU has retained the tuition and other payments made by Plaintiff Torres and the members of the New York Subclass.

CLASS ACTION COMPLAINT
CASE NO. TBD

330.    NCU has breached its contracts for doctoral education services with Plaintiff Torres and each member of the New York Subclass Class. NCU's breach has caused damage to Plaintiff Torres and each member of the New York Subclass Class in the form of additional and unexpected tuition payments, other costs, and student loans (e.g., for tuition, fees, costs of living, etc.) and, in many instances, stopping the pursuit of their education altogether, which caused them to be further damaged in the amount of wasted tuition payments they made before being forced to withdraw from NCU's doctoral program.

331.    Moreover, NCU has breached its contracts with Plaintiff Torres and each member of the Class to provide doctoral educational services to them by engaging in systematic conduct such that it has failed to honor the covenant of good faith and fair dealing implied in every contract. NCU has engaged in unreasonable conduct that was entirely inconsistent with the reasonable expectations of Plaintiff Torres and each member of the New York Subclass Class. NCU has breached its contracts for doctoral education services with Plaintiff Torres and each member of the New York Subclass. NCU's breach has caused damage to Plaintiff Torres and each member of the New York Subclass in the form of additional and unexpected tuition payments, other costs, and student loans and, in many instances, stopping the pursuit of their education altogether, which caused them to be further damaged in the amount of wasted tuition payments they made before being forced to withdraw from NCU's doctoral program.

### TWENTY-FIRST CAUSE OF ACTION
### Breach of Implied Covenant of Good Faith and Fair Dealing Against NCU
### (Under New York Law on Behalf of Alternative New York Sub-Class)

332.    Plaintiff realleges and incorporates the preceding allegations by reference as if set forth fully herein.

CLASS ACTION COMPLAINT
CASE NO. TBD

333.    Plaintiff Torres brings this cause of action in the alternative on behalf of a New York Subclass under California common law. NCU has systematically violated its contracts with Plaintiff Torres and each member of the New York Subclass.

334.    Plaintiff Torres and each member of the New York Subclass contracted with NCU to obtain doctoral education services.

335.    Implied in each contract was a covenant of good faith and fair dealing.

336.    Plaintiff Torres and each member of the New York Subclass provided value to NCU in the form of tuition payments and other costs for their doctoral programs as contracted.

337.    By the scheme and conduct detailed herein, NCU has breached the implied duty of good faith and fair dealing implied in its contracts.

338.    This breach on the part of NCU has resulted in NCU doctoral students being damaged because they were required to enroll in courses that would not have otherwise been necessary, thereby necessitating substantial additional tuition payments, other costs, and student loans (e.g., for tuition, fees, costs of living, etc.). In addition, many students have been forced to stop pursuing their education.

**TWENTY-SECOND CAUSE OF ACTION**
**Violation of NY CLS Gen Bus § 349 (New York Consumer Protection Act)**
**Against NCU**
**(On Behalf of Alternative New York Sub-Class)**

339.    Plaintiff realleges and incorporates the preceding allegations by reference as if set forth fully herein.

340.    Plaintiff brings this cause of action in the alternative on behalf of an New York Sub-Class. NCU has engaged in unfair, unlawful, and fraudulent business practices, as set forth above.

341.    NY CLS Gen Bus § 349 specifically prohibits the use of unfair or deceptive trade practices in the conduct of any business, trade, or commerce or in the furnishing of any service in New York.

342.     By engaging in the acts and practices described in this complaint, NCU has committed one or more acts of unfair and deceptive trade practices.

343.     Specifically, NCU misrepresented to prospective and current doctoral students that their respective programs could be completed in a shorter time and for less cost than the programs actual length-of-time and costs.

344.     NCU also knowingly concealed, omitted and otherwise failed to state material facts about NCU's doctoral education services that would tend to, and did, in fact, deceive students. Specifically, NCU falsely represented the time and tuition costs of obtaining a doctoral degree, not only knowing that such representations were false, but also with no intent to offer such services to its students. NCU also failed to disclose that it intentionally and deliberately used its doctoral programs as a means of improperly extracting tuition and generating revenue. NCU further failed to disclose that it knowingly created and implemented doctoral programs that are fraught with inefficiencies, meant to ensure that students do not receive the timely responses and attention that they were promised.

345.     NCU knew that its doctoral programs were and continue to be systematically prolonged by the violations set forth herein.

346.     The misrepresentations and omissions were material to Plaintiff Torres and the members of the New York Subclass.

347.     NCU 's unfair and deceptive trade practices and acts occurred and continue to occur repeatedly during its business. These actions constitute unfair and deceptive trade practices.

348.     Plaintiff Torres and members of the New York Subclass relied on these representations and omissions while pursuing their doctoral degrees. Furthermore, NCU intended that Plaintiff Torres and members of the New York Subclass would rely on the representations and omissions.

349.    As a direct and proximate result of NCU 's unfair and deceptive practices and acts, Plaintiff Torres and the New York Subclass have suffered and will continue to suffer actual damages. Had Plaintiff Torres and the members of the New York Subclass been aware of the misrepresentations and omissions, they would not have paid tuition to NCU or incurred additional costs and student loans (e.g., for tuition, fees, costs of living, etc.) for the educational services that NCU purported to provide.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the Class and Subclasses request that the Court enter an Order or judgment against NCU as follows:

A. Certifying this case as a class action and appointing Plaintiff Torres and her counsel to represent the Class;

B. Awarding Plaintiff Torres and other Class members damages and all other relief available under the claims alleged including punitive damages;

C. Awarding Plaintiff Torres and other Class members pre-judgment and post judgment interest as a result of the wrongs complained of herein;

D. Awarding Plaintiff Torres and other Class members their costs and expenses in this litigation, including reasonable attorneys' fees and other costs of litigation;

E. Awarding a trebling of damages where allowed under applicable state law;

F. Requiring NCU to disgorge the revenue earned of its doctoral coursework;

G. Enjoining NCU from engaging further unlawful conduct as described herein;

H. Awarding Plaintiff and other Class members restitution; and

I. Awarding such other relief as the Court deems just and proper.

# DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

Dated: September 6, 2018

Respectfully submitted,

By:   /s/ *Adam B. Wolf*

Adam B. Wolf (State Bar No. 215914)
Tracey B. Cowan (State Bar No. 250053)
**PEIFFER WOLF CARR & KANE,
A PROFESSIONAL LAW CORPORATION**
5042 Wilshire Blvd, No. 304
Los Angeles, CA 90036
Tel: (415) 766-3545
Fax: (415) 402-0058
awolf@prwlegal.com
tcowan@prwlegal.com

Paul Lesko (*pro hac vice pending*)
818 Lafayette Avenue
Second Floor
St. Louis, MO 63010
Telephone: (314) 833-4826
plesko@pwcklegal.com

*Counsel for Plaintiff and the Proposed Classes*